IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERNEST ROLLINS, | § | |
| | § | |
| *Petitioner,* | § | |
| | § | |
| v. | § | Civil Action No. H-07-3173 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
| *Respondent.* | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Ernest Rollins, proceeding *pro se* and *in forma pauperis*, seeks habeas

relief under 28 U.S.C. § 2254 challenging his conviction for aggravated robbery of a person

aged sixty-five years or older.  Respondent filed a motion for summary judgment (Docket

Entry No. 10), to which petitioner responded (Docket Entry No. 11).  Based on consideration

of the pleadings, the motion and response, the record, and the applicable law, the Court

**GRANTS** the motion for summary judgment and **DISMISSES** this petition for the reasons

that follow.

## I.  PROCEDURAL BACKGROUND

Petitioner was convicted of aggravated robbery of a person aged sixty-five years or

older in the 230th District Court of Harris County, Texas.  Following his plea of "true" to two

enhancement paragraphs, he was sentenced to forty-five years confinement.  The conviction

was affirmed on appeal.  *Rollins v. State*, No. 01-05-0293-CR (Tex. App. – Houston [1st

Dist.] 2006, no pet.) (not designated for publication).  The Texas Court of Criminal Appeals

denied petitioner's state habeas application without a written order on the findings of the trial court without a hearing. *Ex parte Rollins*, No. 65,348-02.

Petitioner raises the following grounds for federal habeas relief:

(1)     insufficiency of the evidence;

(2)     error by the trial court in excluding exculpatory evidence;

(3)     a *Brady* violation; and

(4)     prosecutorial misconduct in using false or misleading evidence.

Respondent argues that these grounds fail as a matter of law.

## II.  FACTUAL BACKGROUND

The state court of appeals set forth the following statement of facts in its opinion:

On September 7, 2004, appellant robbed Gloria Valdez as Valdez attempted to exit her vehicle in the parking lot of Rosita's Restaurant. Valdez, who was 76 years old at the time of the robbery, testified that appellant pressed a gun to the right side of her body and demanded money. When she refused his demands, appellant variously 'punched' and 'pushed' the gun against Valdez's body with increasing force. Valdez testified that she was in pain as a result of appellant's actions, that she experienced bruising where appellant had pressed the gun against her, and that she remained in bed for three days after the incident.

With appellant continuing to press the gun against her while demanding money, Valdez turned and reached for the appellant's throat in an effort to defend herself. Moments later, she observed a police car driving past and screamed that she was being robbed. The police car was driven by Harris County Sheriff's Deputy Vines, who was en route to an unrelated incident. Hearing Valdez's cry for help, Vines pulled into Rosita's parking lot, where he observed appellant pinning Valdez against her vehicle. Appellant then discarded what appeared to be a white towel and began to walk away from Valdez. Valdez yelled to Vines, who had exited his vehicle, that appellant had just robbed her. Vines then drew his weapon and ordered appellant to stop. Appellant initially

2

obeyed Vines's commands, but when Vines ordered him to the ground, appellant ran off and eluded Vines by climbing over an iron gate. Vines called for backup and returned to the parking lot, where he recovered the white towel discarded by appellant. The towel contained a BB gun that resembled a .45 caliber handgun.

Harris County Sheriff's Deputy Demilia responded to Vines's call for assistance. After a brief search, Demilia and Vines found appellant hiding in a freestanding structure located in the backyard of a home near Rosita's. The deputies arrested appellant and drove him back to Rosita's, where Valdez positively identified appellant as the man who had robbed her. Demilia testified that Valdez then recounted the details of the robbery to him, specifically noting that she experienced pain when appellant pressed the BB gun into her body.

*Rollins*, at *1.

## III.   THE APPLICABLE LEGAL STANDARD

This petition is governed by applicable provisions of the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal relief

cannot be granted on legal issues adjudicated on the merits in state court unless the state court

adjudication was contrary to clearly established federal law as determined by the Supreme

Court, or involved an unreasonable application of clearly established federal law as

determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28

U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies

a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a

set of facts that are materially indistinguishable from a Supreme Court decision and arrives

at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *See id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

## IV. INSUFFICIENCY OF THE EVIDENCE

Petitioner contends that the evidence is insufficient to support his conviction. Factual insufficiency of the evidence is not a cognizable federal habeas ground. *Estelle v. McGuire*,

502 U.S. 62, 67 (1991); *Woods v. Cockrell*, 307 F.3d 353, 357-58 (5th Cir. 2002).

Accordingly, petitioner's argument raises only a legal sufficiency challenge.

Petitioner challenged the legal sufficiency of the evidence on direct appeal.  In finding

the evidence legally sufficient to support the conviction, the state court of appeals rejected

petitioner's claim and held as follows:

> In his first point of error, appellant contends that the evidence is legally insufficient to sustain his conviction for aggravated robbery.  Specifically, appellant argues that the evidence failed to show that he intentionally and knowingly caused bodily injury to Valdez, as alleged in the indictment.
>
> We review the legal sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.  Although our analysis considers all evidence presented at trial, we may not re-weigh the evidence and substitute our judgment for that of the fact finder.
>
> A person commits robbery when, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.  *See* TEX. PEN.CODE ANN. § 29.02.  A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property.  *Id.* § 31.03(a).  A conviction for aggravated robbery requires the State to prove that the defendant (1) committed a robbery and (2) either caused serious bodily injury to another, used or exhibited a deadly weapon, or cause [d] bodily injury to another person or threaten[ed] or place[d] another person in fear of imminent bodily injury or death, if the person is: . . . 65 years of age or older[.]  *See id.* § 29.03.
>
> In the case at bar, the indictment alleged aggravated robbery.  The jury was authorized to convict if it found that appellant,

5

> While in the course of committing theft of property owned by
> Gloria Valdez and with intent to obtain and maintain control of
> the property, intentionally and knowingly cause[d] bodily injury
> to Gloria Valdez a person at least sixty-five years of age by
> sticking a BB gun into the ribs of Gloria Valdez.

Appellant argues that the evidence is legally insufficient to show that he
intentionally and knowingly caused bodily injury to Valdez. Appellant's
contention rests on his assertion that Valdez did not suffer bodily injury during
the robbery.

The Texas Penal Code defines bodily injury to mean physical pain, illness, or
any impairment of physical condition. *See* TEX. PEN. CODE ANN. § 1.07(8).
The Court of Criminal Appeals has interpreted this definition broadly, holding
that it encompasses 'even relatively minor physical contacts so long as they
constitute more than mere offensive touching.' When considering whether
there is sufficient evidence to establish that a victim suffered bodily injury,
juries are free to apply common knowledge, observation, and experience gained
in ordinary affairs of life, while giving effect to inferences that may reasonably
be drawn from the evidence. Significantly, the bodily injury element of a
robbery or aggravated robbery charge is satisfied 'so long as violence is clearly
perpetrated against another for the purpose of . . . preventing or overcoming
resistance to theft.'

Here, Valdez testified that in an effort to overcome her resistance to theft,
appellant 'punched' and 'pressed' a BB gun into the side of her body. Valdez
further testified that appellant's actions caused her physical pain and resulted
in bruising. Appellant contends that the State's failure to offer any physical
evidence to support Valdez's testimony regarding her injury prohibits the jury
from concluding that a bodily injury occurred. Interpreting Valdez's testimony
through the prism of their own experience, however, rational jurors could have
inferred that appellant inflicted bodily injury on Valdez by jabbing a weapon
into her body. Drawing such a conclusion seems particularly rational when one
considers Valdez's advanced age; and Valdez's testimony suffices, even in the
absence of corroborating physical evidence, to satisfy the bodily injury
requirement necessary to convict appellant.

Finally, we note that the evidence was sufficient for a rational juror to conclude
that appellant caused Valdez's injuries intentionally and knowingly. A person
acts intentionally when it is his conscious objective or desire to cause a result.

6

See TEX. PEN. CODE ANN. § 6.03(a). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). Proof of a culpable state of mind is nearly always provided by circumstantial evidence and may be inferred from the acts, words, or conduct of the accused. Based on Valdez's testimony regarding appellant's threatening words and actions, we conclude there is sufficient evidence for the jury to infer that appellant was aware that his conduct was reasonably certain to cause the result that it did. Viewed in the light most favorable to the verdict, we conclude the evidence was sufficient to show that appellant intentionally and knowingly caused bodily injury to Valdez.

*Rollins*, *1-3 (citations omitted).

This Court has reviewed petitioner's insufficiency claim and finds it without merit. In reviewing the sufficiency of the evidence, the federal standard for review is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under this standard, the jury may disregard any evidence it chooses to disregard, as it is the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." *Id.* Any contradictory testimony does not affect the validity of the guilty verdict. *Id.* The evidence can be sufficient to support a conviction under *Jackson* even when it also supports a claim of innocence. *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The evidence set forth by the state court of appeals in its opinion is itself enough to allow a rational trier of fact to convict petitioner of the allegations in the indictment and jury charge, and the evidence presented at trial was enough to defeat a legal sufficiency challenge

7

in a Texas appellate court. *See King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000);

*Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Further, an independent review

of the trial record reveals sufficient evidence under *Jackson* to sustain the jury's verdict.

The state habeas court denied relief on this issue. Petitioner fails to show that the state

court's determination was contrary to or involved an unreasonable application of federal law,

or that it was an unreasonable determination of the facts based on the evidence in the record.

Respondent is entitled to summary judgment on this issue.

## V.  TRIAL COURT ERROR

Petitioner claims that the trial court erred in admitting certain prejudicial evidence and

excluding other exculpatory evidence. In denying this claim, the state habeas court found

that:

> 2.      Because the applicant failed to raise on direct appeal his instant habeas
>         claims of trial court error regarding various evidentiary rulings, the
>         applicant is procedurally barred from raising the claims in the instant
>         proceeding.

*Ex parte Rollins*, p. 129 (citation omitted). The Texas Court of Criminal Appeals expressly

relied on this finding in denying habeas relief.

It is well-settled that federal review of a claim is procedurally barred if the last state

court to consider the claim expressly and unambiguously based its denial of relief on a state

procedural default. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Amos v. Scott*, 61 F.3d

333, 338 (5th Cir. 1995). To overcome the state procedural bar, a petitioner must demonstrate

either cause for the procedural default and actual prejudice as a result of the alleged violation

of federal law, or that failure to consider the claim will result in a fundamental miscarriage

of justice. *Coleman*, 501 U.S. at 750. The "fundamental miscarriage of justice" exception

is reserved for cases of actual innocence, where the petitioner shows, as a factual matter, that

he did not commit the offense for which he was convicted. *Finley v. Johnson*, 243 F.3d 215,

222-23 (5th Cir. 2001). In the instant case, petitioner shows neither cause for failing to raise

this claim on direct appeal nor proof of actual innocence.

The state habeas court denied relief on this issue. Petitioner fails to show that the state

court's determination was contrary to or involved an unreasonable application of federal law,

or that it was an unreasonable determination of the facts based on the evidence in the record.

Respondent is entitled to summary judgment on this issue.

## VI.  *BRADY* VIOLATION

Petitioner asserts that the State deliberately withheld the results of fingerprint tests on

the BB gun. He claims that the results of the test were favorable to the defense and would

have resulted in a "not guilty" finding if presented to the jury.

In support of his argument, petitioner refers to a portion of the police report wherein

officers told the assistant district attorney that "there were probably no clear fingerprints on

the gun due to the deputies on the scene checking the gun to make it safe." The prosecutor

nonetheless requested the testing, and an officer was instructed to take the gun to the latent

print lab. *Ex parte Rollins*, p. 59. Petitioner also refers to Officer Jonathan Sandel's trial

testimony  that he submitted the gun to the police fingerprint lab. (Docket Entry No. 1,

9

Exhibit E.) Petitioner argues that these portions of the police report and trial testimony prove

that fingerprint testing was undertaken, that results favorable to the defense were obtained,

and that the State knowingly failed to disclose the results to defense counsel.

In compliance with the trial court's order, defense counsel submitted an affidavit on

collateral review regarding this issue, and testified as follows:

> I reviewed and took notes of the offense report in the State's file from the inception of my representation of the applicant and reviewed it prior to trial. My review of those notes, my interviews with the applicant and my investigator[']s report formed the basis of my cross examination o[f] the witnesses presented at trial.

> I do not believe that a fingerprint analysis was done on the gun by the prosecution nor do I recall reviewing the results of any fingerprint analysis report.

*Ex parte Rollins*, p. 123. The state court found that "the facts asserted in the Affidavit of

[defense counsel] filed in this cause are true [and] that the affidavit is credible[.]" *Id.*, p. 129.

In rejecting petitioner's *Brady* claim, the state trial court made the following relevant findings:

3. The applicant fails to show that a fingerprint analysis was ever performed on evidence in the primary case, that a report was ever created as a result of such analysis, and that such information was withheld by the State from defense counsel.

4. The applicant fails to allege sufficient facts which, if true, would show that the State withheld exculpatory evidence in the primary case.

*Ex parte Rollins*, pp. 129-30 (citations omitted). The Texas Court of Criminal Appeals

expressly relied on these findings in denying habeas relief.

To establish a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), a petitioner must establish (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; (3) that the evidence was material to guilt or punishment; and (4) that non-discovery of the evidence was not the result of lack of due diligence. *Graves v. Cockrell*, 351 F.3d 143, 153-54 (5th Cir. 2003).

Petitioner in the instant case fails to present probative summary judgment evidence that the print analysis was undertaken, that a report was made of the testing, and that the results of the testing were known to the prosecution and favorable to the defense. At most, his references to the police report and trial testimony show only that an officer submitted the gun for testing. The police report shows that the integrity of any fingerprint evidence on the gun likely was compromised due to its handling at the scene of the offense. Petitioner's allegation that the presumed testing resulted in favorable but undisclosed evidence is nothing more than conclusory, unsupported speculation. No *Brady* violation is shown.

The state habeas court denied relief on this issue. Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of federal law, or that it was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment on this issue.

## VII.   PROSECUTORIAL MISCONDUCT

Petitioner avers that the State knowingly used perjured testimony in allowing Officer Demilia to testify that a photograph taken of petitioner after his arrest showed that he was not

wearing a shirt.  Although not borne out by the record, petitioner claims that the "most controversial and highly contested issue" at trial was whether petitioner was wearing a shirt when arrested.  (Docket Entry No. 11, p. 4.)  According to petitioner, the State should have used his actual "booking" photograph, which presumably showed him wearing a shirt.  He alleges that had the State used this other photograph, the jury would have found him not guilty.  He further alleges that the prosecution knowingly used perjured evidence in allowing the police officers to testify that petitioner was shirtless when arrested.

Officer Sandel testified that after petitioner gave chase, the officers found him hiding behind a door on the back porch of a nearby residence.  R.R. Vol. 3, p. 63.  He stated that petitioner was sweating and breathing very hard, and not wearing a shirt.  *Id.*  Officer Harold Vines testified that while fleeing, petitioner pulled off his shirt and threw it down.  *Id.*, p. 27.  Petitioner testified that the officers were lying, as he had his shirt on when he was arrested.  *Id.*, Vol. 4, p. 122.  Officer Garrett Demilia identified State's Exhibit No. 3 as petitioner's booking photograph, and testified that it showed petitioner shirtless, as he appeared at the time of his arrest.  *Id.*, p. 148.  He further testified that had petitioner been wearing a shirt at the time of his arrest, he would have been booked and photographed wearing the shirt.  *Id.*, p. 150.  No other arrest or booking photograph of petitioner was introduced into evidence by either party.  Although a purported "booking photograph" was marked at State's Exhibit No. 2, it was not offered into evidence and does not appear in the record.  *Id.*, Vol. 8, p. 5.

12

The record further shows that, after both sides rested, petitioner was allowed to reopen his defense to present a late witness.  Petitioner subsequently requested leave to re-open his defense for a second time, in order to present evidence of petitioner's jail booking card.  The card reflected petitioner's personal property as a pair of blue/black shoes, gray shorts, and a gray shirt.  *Id.*, Vol. 8, p. 16.  The trial court informed the parties that the request would be granted if the State were able to reach witnesses necessary to rebut this new evidence. Because the State was unable to reach the necessary witnesses, the trial court denied petitioner's second request to re-open.  *Id.*, Vol. 5, pp. 11-13.  Petitioner presented the evidence through an offer of proof.  *Id.*, pp. 39-42.

To establish a due process violation based on the State's knowing use of false or misleading evidence, a habeas petitioner must show that (1) the evidence was false, (2) the evidence was material, and that (3) the prosecution knew the evidence was false.  Evidence is false if, *inter alia,* it is specific, misleading evidence important to the prosecution's case in chief.  False evidence is material only if there is any reasonable likelihood that it could have affected the jury's verdict.  *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000); *Nobles v. Johnson,* 127 F.3d 409, 415 (5th Cir. 1997).  Mere contradictions by witnesses or inconsistencies in testimony, standing alone, do not establish perjury, and resolving conflicts in witness testimony and evidence is generally left to the trier of fact.  *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990).

Here, petitioner testified that he was wearing a shirt when arrested, and the police officers testified that he was not. Officer Demilia testified that State's Exhibit No. 3, a photograph of a shirtless petitioner, showed petitioner as he appeared at the time of his arrest. Consequently, petitioner establishes nothing more than a factual dispute between the defense and the State as to whether petitioner was wearing a shirt when arrested. Further, petitioner's attire at the time of his arrest was not a factor in the complainant's identification of him as her assailant. As it was petitioner's contention at trial that the true assailant had escaped in a gray automobile and that petitioner panicked and ran from the officers, petitioner's clothing at the time of his arrest was not an element of his defense in chief. Thus, petitioner fails to show that the officers' testimony was false, that the prosecution knew it was false, and that the testimony was material to the jury's verdict. Even assuming petitioner had been allowed to introduce into evidence the jail booking card reflecting petitioner's property as shoes, shorts, and a shirt, such evidence would have merely added to, and not resolved, this dispute regarding petitioner's clothing. Petitioner's claim for prosecutorial misconduct based on false or misleading evidence and perjury is not supported by the record.

In rejecting petitioner's claim, the state habeas court found as follows:

5.      The applicant fails to allege sufficient facts which, if true, would entitle him to relief on his claim that the State introduced false evidence regarding the applicant not wearing a shirt as he was being chased by law enforcement officers and upon his arrest.

*Ex parte Rollins*, p. 130 (citation omitted). The Texas Court of Criminal Appeals expressly relied on this finding in denying habeas relief.

14

The state habeas court denied relief on this issue. Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of federal law, or that it was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment on this issue.

## VIII.   CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 10) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and his case is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED AS MOOT**.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the 23rd day of May, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE